PARKER, Justice.
Altai Virani filed an action against 600, L.L.C. (“the LLC”), attempting to redeem real property the LLC purchased from the bank that had foreclosed on that property. After a bench trial, the Talladega Circuit Court entered a judgment establishing the amount Virani was required to pay to redeem the property. The LLC appeals, arguing that the amount the judgment requires him to pay is incorrect. We reverse and remand.

Facts and Procedural History

On February 2, 2007, AAN, Inc. (“AAN”), purchased a lot located at 600 1st Street SW, in Childersburg (hereinafter referred to as “the 1st Street property”). AAN’s purchase of the 1st Street property was funded by a $540,000 promissory note from Aliant Bank (“Aliant”); the promissory note was secured by a mortgage on the 1st Street property.
Subsequently, AAN defaulted on the note and Aliant foreclosed on the mortgage, and, on November 3, 2009, Aliant purchased the 1st Street property at the foreclosure sale. The purchase price at the foreclosure sale was $511,000. Aliant then sold the 1st Street property to the LLC on December 18, 2009, for $275,000. On February 17, 2010, AAN quitclaimed to Virani “all the rights, title and interests, if any,” it had in or to the 1st Street property, “including but not limited to any and all rights of redemption or redemption rights available under the law.”
On March 8, 2010, Virani’s attorney sent a letter to the LLC, stating Virani’s intention to redeem the 1st Street property and “officially requesting an itemized statement of all lawful charges claimed” by the LLC within 10 days of the date of the letter. The letter identifies Virani as “the current tenant” of the 1st Street property.
On March 10, 2010, Virani purchased from Aliant “all of its rights, title, and interest in and to” the February 2, 2007, promissory note. According to Virani, he purchased “the excess amount owed to Aliant.” Virani’s brief, at 10.[1] The promissory note had originally been secured by Aliant’s mortgage on the 1st Street property.
On March 16, 2010, the LLC responded to Virani’s letter, providing a statement of charges, which included three items: the purchase price Aliant paid at the foreclosure sale, which was $511,000; interest on the purchase price from the date of the foreclosure sale through March 16, 2010, at 12% per annum, for a total of $22,344; and the cost of property insurance obtained through State Farm Insurance Company, at a cost of $4,343. The total of the three charges was $537,687.
On May 19, 2010, Virani filed a “complaint for redemption” in the trial court, naming two defendants: Birmingham Partners, L.L.C., and the LLC.[2] In the *833 complaint, Virani alleged that he owned “the right to redeem the [1st Street] property”; that he had requested from the LLC a statement of charges necessary to redeem the property; and that, although the LLC had responded, the statement provided was
“incorrect[,] ... false and fraudulent in that it include[d] the amount of the debt Aliant Bank paid at foreclosure sale and contained] a very considerable number of charges which [were] not in law proper and some of the charges therein claimed [were] exaggerated; and [Virani was] unable to ascertain the correct amount of said mortgage debt or the correct amount of the charges claimed by said defendant, 600, L.L.C.”
Included with Virani’s complaint was a check for “$288,742.31 ($275,000.00 as purchase price and $13,742.32 as interest at $90.41 per di[e]m),” which Virani inter-pleaded into the trial court.
On June 3, 2010, the LLC sent a letter to Virani, demanding that he surrender possession of the 1st Street property within 10 days.
On June 17, 2010, the LLC filed an answer and counterclaim in response to Virani’s complaint. The counterclaim alleged that Virani had been occupying the 1st Street property as a “tenant at will” since the LLC had purchased the property from Aliant. The counterclaim also alleged that Virani had paid no rent in December 2009, had paid the LLC $4,500 in rent in January 2010 and had paid $4,500 again in February 2010, but had paid no rent since then. The LLC further alleged that it had served Virani “with a 10 day notice to vacate and give up possession of said property” but that Virani “failed and refused to deliver said possession.” The LLC requested that the trial court enter a judgment restoring it to possession of the 1st Street property and awarding it damages, interest, and costs.
A bench trial was held on September 30, 2010. Only two witnesses testified at trial: Virani and Abdul Rahman Rahim, who was a member, an officer, and the managing partner of the LLC. During the trial, Vira-ni admitted that he did not pay rent to the LLC after February 2010. Virani then paid the LLC all rent previously due for the 1st Street property, and the trial court ultimately dismissed the LLC’s counterclaim. See infra note 3. The LLC’s brief, at 4. At the request of the trial court, both Virani and the LLC submitted posttrial briefs.
On December 13, 2010, the trial court entered the following judgment:
“This matter came to trial on September 30, 2010. The Court finds the following facts to be undisputed:
“On or about February 2, 2007, AAN, Inc. executed a certain note secured by a mortgage to Aliant Bank, which said mortgage was duly recorded in the Probate Office Talladega County in Book 1224, Page 447. Said mortgage was secured by property located at 600 1st St. SW, Childersburg, Alabama 35044, respectively, located and situated in Tal-ladega County, Alabama, described as follows, to-wit:
“ ‘Block Two (2) of the Childersburg Land Company Survey of Childers-burg, as recorded in Plat Book 1, Page 20, in the Probate Office of Tal-ladega County, Alabama. Lying and being situated in Section 20, Township 20 South, Range 3 East, in the City of Childersburg, Talladega County, Alabama.’
“On or about November 3, 2009, Ali-ant Bank, the mortgagee, foreclosed said mortgage recorded in Book 1224, Page 447 under the power of sale contained therein. Said Foreclosure Deed is filed *834 in Book 938, Page 305. Aliant Bank bid the property in for $511,000.00.
“Subsequently, on or about December 18, 2009, Defendant 600, L.L.C. purchased from Aliant Bank the aforesaid property for the sum of $275,000.00.
“Subsequently, on or about February 17, 2010, AAN, Inc., by and through Quit Claim Deed, did transfer its redemption rights to Plaintiff, Altai Virani. Said deed is recorded in Book 943, Page 359 in said Probate Office.
“That [Virani] is the owner of the right to redeem the subject property from said mortgage foreclosure sale of November 3, 2009, pursuant to and in accordance with § 6-5-248 et seq., Ala Code 1975, by virtue of said Quit Claim Deed dated February 17, 2010.
“On or about March 8, 2010, [Virani] made demand on Defendants, Birmingham Partners, L.L.C. and 600, L.L.C., for an itemized statement in writing of the debt and all lawful charges claimed by it as the purchaser from Aliant Bank and owner of the subject property.
“On or about March 17, 2010, [Virani] received from Defendant, 600, L.L.C., a statement of the amount of the debt and charges claimed by Defendant, 600, L.L.C. Said statement is alleged [to be] incorrect, false and fraudulent in that it includes the amount of the debt Aliant Bank paid at foreclosure sale and contains a number of charges which are not in law proper and some of the charges therein claimed are exaggerated; and [Virani] alleges he was unable to ascertain the correct amount of said mortgage debt or the correct amount of the charges claimed by said defendant, 600, L.L.C. [Virani] alleges he was unable to ascertain the amount necessary to be paid or tendered in order to redeem the subject property. The charges alleged to be false, fraudulent, exaggerated, and unlawful are:
“1) The amount paid: $511,000.00
“2) Interest Amount: $22,344.00
“3) Insurance and property taxes: $4,343.00
“Total of the claimed amounts: $537,687.00
“That the [LLC] actually paid $275,000.00 in a subsequent sale by Ali-ant Bank. That Aliant Bank negotiated the difference between its purchase price of $511,000.00 and the sale price of $275,000.00 and the same was purchased (the deficiency) by [Virani].
“IT IS THEREFORE CONSIDERED AND ORDERED:
“That Alabama Code [1975], § 6-5-248 et seq., is the controlling Alabama law that governs the redemption of property along with various Alabama Supreme Court decisions that interpret the Alabama Code. In this instance, Alabama Code § 6-5-253(a) controls the purchase price to be paid by the redeemer of the land. The question made the basis of the current cause of action is, what is the purchase price of the land and how much is the current purchaser due to be paid by the redeemer? In the clear language of the statute, ‘[a]nyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10 (as it is now or hereinafter [sic] may be amended), and all lawful charges, also with interest as aforesaid.’ Alabama Code [1975,] § 6-5-253(a).... The statute states clearly that the redeemer must pay the purchaser the purchase price paid at sale. Here in the instant case, 600, L.L.C., is the purchaser of the *835 aforementioned real estate. The purchase price by 600, L.L.C., was $275,000.00. Nowhere in the statute does it state that the redeemer must pay the price of the sale at the actual foreclosure sale. Therefore 600, L.L.C., is only due the amount that [it] purchased the real estate for and no more. Any other interpretation would be to create a windfall in favor of 600, L.L.C., which is clearly in violation of § 6-5-253. The Court Orders the purchase price for redemption to be $275,000.00 plus taxes and insurance. Costs are taxed to the Defendants.”
The LLC appealed.[3]

Standard of Review

“We review questions of statutory construction and interpretation de novo, giving no deference to the trial court’s conclusions. Greene v. Thompson, 554 So.2d 376 (Ala.1989).” Pitts v. Gangi, 896 So.2d 433, 434 (Ala.2004).

Analysis

The LLC raises several issues for this Court’s review, which can be condensed to the following two issues: (1) whether the trial court erred in concluding that “the purchase price for redemption [is] $275,000.00 plus taxes and insurance”; and (2) whether the trial court erred in failing to include interest in the calculation of the redemption price.

A. Whether the trial court erred in determining the redemption price of the 1st Street property

In this case, the following facts are undisputed: that, following AAN’s default on the promissory note, Aliant paid $511,000 for the 1st Street property at the foreclosure sale; that the LLC purchased the 1st Street property from Aliant for $275,000; and that Virani subsequently purchased from AAN the right of redemption regarding the property. The issue before this Court is which of the two prices for which the property was sold — the foreclosure sale price of $511,000 or the subsequent purchase price of $275,000 — is the relevant price in determining the redemption price. The redemption price is dictated by § 6-5-253(a), Ala.Code 1975, which provides, in pertinent part:
“(a) Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10 (as it is now or hereinafter [sic] may be amended), and all other lawful charges, also with interest as aforesaid; lawful charges are the following:
“(1) Permanent improvements as prescribed herein.
“(2) Taxes paid or assessed.
“(3) All insurance premiums paid or owed by the purchaser.”
(Emphasis added.) Thus, the issue is to which “sale” is the statute referring?
The LLC argues that the sale is the foreclosure sale and that the “purchase price” is the price paid at the foreclosure sale. In support of that argument, it cites Pitts v. Gangi, supra, which presented the same issue. In Pitts, a bank foreclosed on *836 a mortgage it held on a house and purchased the mortgaged house at the foreclosure sale for $380,000. After the foreclosure sale, the house burned down; the bank then collected $315,000 from an insurance policy on the house and sold the property to a third party for $8,500. The original owner then attempted to redeem the property and argued that the redemption amount was based on $8,500 paid at the subsequent sale, not the $380,000 paid at the foreclosure sale. This Court, while noting that the sale price should be reduced by the amount of the insurance proceeds the bank received when the house on the property was destroyed, concluded that § 6-5-253(a) referred to the sale price at the foreclosure sale, not at the subsequent sale. We stated that “both the plain meaning and the existing precedent governing this statute lead us to conclude that Pitts must pay Gangi the purchase price paid by Bank One at the foreclosure sale.” Pitts, 896 So.2d at 436. See also Dicie v. Morris, 285 Ala. 650, 653, 235 So.2d 796, 798 (1970) (holding that the redemption price was based on “the amount bid at foreclosure ... and not ... what the [subsequent purchaser] paid ... for the property”).
Additionally, the LLC argues that the word “sale,” as used in § 6-5-253(a) should be read in light of § 6-5-247, Ala. Code 1975, which states, in relevant part:
“Unless the context otherwise requires, the words defined in this section shall have the following meanings when found in this article:
“(1) Sale or Sold. Any execution, judgment, or foreclosure sale, whether the sale is made under any power of sale in any mortgage or deed of trust or statutory power of sale, or by virtue of any judgment in any court of competent jurisdiction.”
As noted, § 6-5-253(a) provides that anyone entitled to and desiring to redeem real estate under the provisions of Title 6, Chapter 5, Article 14A, Code of Alabama 1975, must pay or tender to the purchaser “the purchase price paid at the sale, with interest .... ” (Emphasis added.) The term “sale,” as used in Title 6, Chapter 5, Article 14A, Code of Alabama 1975, is defined, in pertinent part, as “[a]ny execution, judgment, or foreclosure sale.... ” § 6-5-247(1) (emphasis added). Applying the express language of the statutes quoted above, we are clear to the conclusion that, in this case, “the purchase price paid at the sale” means the purchase price paid at the foreclosure sale, see § 6-5-247(1).
Virani argues that the trial court’s judgment was not in error insofar as it determined the redemption price based on the price paid at the subsequent sale. Virani argues that he “purchased the excess amount owed to Aliant ... leaving only the amount purchased plus interest, insurance and taxes due to” the LLC. Virani’s brief, at 10. He cites no caselaw or authority, however, for that proposition, and we find no support for his argument in the applicable statutes.
In this case, Aliant purchased the 1st Street property at the foreclosure sale, extinguishing the mortgage. Any remaining deficiency on the promissory note secured by the mortgage, as sold to Virani by Aliant, is owed directly to Virani by AAN and is, thus, completely unrelated to the title to the 1st Street property, now held by the LLC.
We conclude that the trial court erred in setting the redemption price based on the price Aliant received from the LLC at the subsequent sale, $275,000, rather than on the price Aliant paid at the foreclosure sale, $511,000. Therefore, the trial court’s judgment is due to be reversed.

*837
B. Whether the trial court erred in not including interest in the redemption price

The LLC argues that “[t]he Trial Court further erred by failing to order interest as set forth in” § 6-5-253(a), Ala.Code 1975. The LLC’s brief, at 15. As quoted above, that Code section states that the redeeming party must pay, in addition to the foreclosure-sale price of .the property, “interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10.” Virani agrees, stating
“that interest should be added to the amount to redeem at the statutory rate from the date of purchase to the filing of the Complaint for Redemption pursuant to Alabama Code [1975,] § 6-5-253(a) and § 8-8-10
Virani’s brief, at 12. Thus, because § 6-5-253(a) expressly requires the payment of interest by the person or entity redeeming the property, we direct the trial court to assess interest at the statutory rate from the date the property was purchased at the foreclosure sale.

Conclusion

Because the trial court erred in setting the redemption price under § 6-5-253(a), Ala.Code 1975, and in not including interest in the redemption price, as also required by that Code section, we reverse the trial court’s judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
MALONE, C.J., and STUART, SHAW, and WISE, JJ., concur.

. It is unclear what Virani is referring to when he states that he purchased the “excess amount owed to Aliant.” Virani further states that he "negotiated and satisfied all deficiencies with regards to Aliant.” Virani's brief, at 5. In its brief, the LLC states:
“On March 10, 2010, [Virani] purchased the interest of Aliant Bank in a promissory note in excess of the $511,000.00 bought at foreclosure or a note in the sum $33,246.58 (which is the balance of the note to the bank after the $511,000.00 paid at foreclosure sale was credited against the original note of $540,000.00). (R. 90-95)”
The LLC's brief, at 9.

. Birmingham Partners, L.L.C., did not appear to defend itself against Virani’s complaint and was later dismissed from the action without objection. See infra note 3.

. Because the trial court’s order did not dispose of Virani’s claim against Birmingham Partners, L.L.C., or the LLC’s counterclaim against Virani, this Court remanded the case to the trial court by an order issued on November 7, 2011. On November 18, 2011, the trial court entered a final judgment dismissing Birmingham Partners, L.L.C., as a party defendant and dismissing the LLC’s counterclaim against Virani, thus making its judgment final.